**— LAW OFFICE OF —**
**JOSHUA BLACK**
**PLC**

Joshua C. Black, #032241
Timothy F. Rosini, #036540
Law Office of Joshua Black, PLC
2999 North 44th Street, Suite 308
Phoenix, Arizona 85018
(623) 738-2225 (p) • (623) 471-6516 (f)
josh@azemploymentlawyer.com
timothy@azemploymentlawyer.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **DESARAE MARTIN** an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>**PRESCOTT VALLEY CHARTER SCHOOL**, an Arizona corporation; **VENSURE EMPLOYER SERVICES INC.**, an Arizona corporation; **NATIONAL PEO PAYROLL MANAGEMENT COMPANY, LLC**, an Arizona limited liability company; **NATIONAL EMPLOYER SERVICES, LLC**, a foreign limited liability company,<br><br><br>Defendant(s). | **Case No.:**<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

**COMES NOW** Desarae Martin, by and through undersigned counsel, for her Complaint against Prescott Valley Charter School, National PEO Payroll Management Company LLC, National Employer Services, LLC, and Vensure Employer Services, Inc., and alleges as follows:

1    **<u>NATURE OF ACTION</u>**

2    1.    This is an action under Title VII of the Civil Rights Act 1964 ("Title VII"),

3    Arizona Civil Rights Act ("ACRA"), and Arizona Revised Statues ("ARS") against

4    Prescott Valley Charter School, National PEO Payroll Management Company LLC, and

5    Vensure Employer Services, Inc., ("Defendants") for its unlawful employment practices

6    of discrimination based on race, gender, disparate treatment, harassment.

7    2.    This action is also brought under Arizona Revised Statues ("ARS") against

8    Prescott Valley Charter School, National PEO Payroll Management Company LLC,

9    National Employer Services, LLC, and  Vensure Employer Services, Inc., ("Defendants")

10   for unlawful actions of Defamation and Intention Infliction of Emotional Distress.

11   **<u>JURISDICTION AND VENUE</u>**

12   3.    This Court has jurisdiction over the subject matter and the parties pursuant

13   to 28 U.S.C. § 1331.

14   4.    The unlawful employment actions alleged herein were committed in whole

15   or in part within the jurisdiction of the United States District Court for the District of

16   Arizona.

17   5.    Venue is proper in this District under 28 U.S.C. § § 1391 (b) and (c) because

18   all or a substantial part of the acts or omissions giving rise to the claims occurred in the

19   state of Arizona.

20   6.    Plaintiff, Desarae Martin or ("Plaintiff"), is an individual residing in Prescott

21   Valley, Yavapai County, Arizona.

22   7.    Defendant, Prescott Valley Charter School, ("Defendant"), is a Charter

23   School located in Yavapai County, Arizona.[1]

24

25   _____

26   [1] *See* A.R.S. 15-184.

Case 3:22-cv-08110-DJH   Document 1   Filed 06/22/22   Page 3 of 16

1   8. Defendant, Vensure Employer Services Inc., hereinafter ("Defendant"), is a

2 Corporation located in Maricopa County, Arizona.

3   9. Defendant, National Employer Services, LLC., hereinafter ("Defendant"), is

4 a limited liability company, domiciled in Michigan, but registered as a foreign LLC and

5 doing business in Maricopa County, Arizona.

6   10. Defendant, National PEO Payroll Management Company LLC., hereinafter

7 ("Defendant"), is a limited liability company located in Maricopa County, Arizona.

8   11. Upon information and belief, at all relevant times to this proceeding Plaintiff

9 was employed at Prescott Valley Charter School.

10   12. Upon information and belief, at all relevant times to this proceeding Plaintiff

11 was employed with Vensure Employer Services, Inc.

12   13. Upon information and belief, at all relevant times to this proceeding Plaintiff

13 was employed with National Employer Services LLC.

14   14. Upon information and belief, at all relevant times to this proceeding Plaintiff

15 was employed with National PEO Payroll Management Company LLC.

16         **<u>PROCEDURE</u>**

17   15. Plaintiff has satisfied all procedural requirements for commencing this

18 action.

19   16. On December 28, 2021, Plaintiff filed a charge of discrimination with the

20 Equal Employment Opportunity Commission, contending that she has been

21 discrimination against in violation of the Arizona Civil Rights Act and Title VII of the

22 Civil Rights Act of 1964.

23   17. On March 25, 2022, the Equal Employment Opportunity Commission issued

24 a Notice of Right to Sue with regard to Plaintiff's charge.

25   18. Plaintiff has filed this lawsuit within 90 days of the date she received the

26 Right-to-Sue letter.

## **STATEMENT OF FACTS**

1

2    19.    Plaintiff was employed as  shift bus driver for Defendant beginning in August

3    of 2020.

4    20.    During the course of her employment Plaintiff faced discriminatory acts from

5    Defendant.

6    21.    Plaintiff  was also falsely accused of untoward behavior.

7    22.    Defendant launched an unwarranted investigation into Plaintiff that was also

8    outside of the proper protocol to be followed as described in Defendant's policy handbook.

9    23.    When Plaintiff continued to defend herself against such wrongful and

10   meritless accusations, Plaintiff was retaliated against by Defendant.

11   24.    Plaintiff was a dependable and skilled employee throughout her employment

12   with Defendant.

13   25.    Plaintiff had never faced any disciplinary action before the retaliatory and

14   discriminatory acts by Defendant that flowed from the false allegations and unwarranted

15   investigation by Defendant.

16   26.    Throughout the course of her employment Plaintiff was praised for the job

17   she did and was even provided monetary raises on three separate occasions.

18   27.    On or about February, 2021, Plaintiff was asked by another employee what

19   Plaintiff said to make another employee upset.

20   28.    Plaintiff had no idea what this employee was talking about.

21   29.    Plaintiff was then informed that another employee had accused Plaintiff of

22   untoward behavior and reported her to the Principal and Superintendent of the school.

23   30.    Plaintiff was severely distressed, scared, and shocked by this turn of events

24   and wanted to ask this other employee what she did.

25

26

31.     Plaintiff believed that this employee was antagonistic towards Plaintiff and held discriminatory views concerning Plaintiff due to her sexual orientation as a member of the LGBTQ community.

32.     Plaintiff first reached out to the Principal to discuss this matter.

33.     Both the Superintendent and Principal rebuffed any request or explanation by Plaintiff to understand what she was being accused of and why.

34.     The Principal and the Superintendent conducted their own investigation and failed to follow the proper protocols described in the School's Policy Manual.

35.     In addition, none of the investigation or information was channeled through the HR office or handled by the proper authorities as described within the School's Policy Manual.

36.     The Superintendent and the Principal conducted their own interviews with various employees, disclosing information to other employees that was harmful to plaintiff without justification or explanation.

37.     Throughout the course of the investigation Plaintiff was kept in the dark, not allowed to voice her perspective, and was at the mercy of this unwarranted and improper investigation by Defendant.

38.     During a conversation with Plaintiff's supervisors, her supervisors and those conducting the investigation blamed Plaintiff for other employees knowing the specifics of the investigation even though it was other employees discussing the matter.

39.     Plaintiff purports that the employee who started the accusations was motivated by her ill-will and discriminatory views of plaintiff on the basis of her sexual orientation as member of the LBGTQ community.

40.     Plaintiff also discovered from other employees that she was believed that the Superintendent harbored ill-will and discriminatory beliefs towards members of the LGBTQ community.

1       41.    Plaintiff learned that the Superintendent displayed discriminatory tendencies
2  against other employees in the past.

3       42.    Because of this, Plaintiff believed that this investigation and the retaliatory
4  behavior that followed was in response and in-part due to her sexual orientation and
5  membership as part of the LGBTQ community.

6       43.    The retaliatory behavior included demoting Plaintiff by changing the
7  structure of her compensation which equated to a lessening of pay.

8       44.    Plaintiff was also not allowed in the school building.

9       45.    Defendant enlisted other employees to follow Plaintiff around and report
10  back to Defendant on Plaintiff's behaviors and locations.

11       46.    Plaintiff was continually singled out and scrutinized over the manner in
12  which Plaintiff conducted her work.

13       47.    Other similarly situated employees did not face the same scrutiny, while
14  behaving in the same manner towards their work as Plaintiff.

15       48.    Defendant made numerous attempts to access and pressure counselors to
16  disclose information and conversations that were protected.

17       49.    Defendant bad mouthed Plaintiff and displayed specific and personal bias
18  against Plaintiff.

19       50.    Plaintiff  was also eventually terminated and told it was because there was
20  not enough work for her in the upcoming school year.

21       51.    Additionally Plaintiff was told she was terminated for "poor performance"
22  but was never provided a proper evaluation or shown any metrics of how her performance
23  was rated.

24       52.    However Plaintiff learned this was not the case and that attendance of school
25  children needing bussing was set to increase, directly contradicting the stated basis for the
26  termination of Plaintiff.

1

## COUNT ONE - DISCRIMINATION ON THE BASIS OF SEXUAL
2
## ORIENTATION (ALL DEFENDANTS)

3      53.    Plaintiff was subject to a wrongful investigation, conducted outside the
4  prescribed protocol of the Defendant's handbook.

5      54.    The accusations about Plaintiff used by Defendant to investigate were based
6  on the discriminatory views and motivations of other employees.

7      55.    The Superintendent, who opened and conducted the investigation, was
8  believed by Plaintiff to have known discriminatory views towards Plaintiff's sexual
9  orientation as a member of the LGBTQ community.

10     56.    After Plaintiff stood up and defended herself, and that the accusations were
11 false, Defendant began mistreating and discriminating against Plaintiff as retaliation.

12     57.    Plaintiff has suffered from Defendant's discrimination on basis of her sexual
13 orientation as a member of the LGBTQ community

14     58.    Plaintiff has experienced unfair and disparate treatment in comparison to
15 other non-LBGTQ employees of Defendant.

16     59.    Defendant addressed the incident unfairly due to its discrimination against
17 Plaintiff on the basis of her sexual orientation.

18     60.    The acts committed by the Defendant were unlawful employment practices
19 of discrimination in violation of Title VII, 42 U.S.C. § 2000e and A.R.S. § 41-1463.

20     61.    As a direct and proximate result of Defendant's discrimination, Plaintiff has
21 suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees
22 and etc.

23  ## COUNT TWO - DISPARATE TREATMENT UNDER TITLE VII (ALL
24  ## DEFENDANTS)

25

26

1    62.    Plaintiff incorporates each and every allegation above as fully set forth

2    herein.

3    63.    Defendant addressed several incidents involving Plaintiff unfairly due to its

4    discrimination against Plaintiff on the basis of her sexual orientation.

5    64.    Defendant used false accusation(s) from employees who held discriminatory

6    views about Plaintiff's sexual orientation to conduct an unwarranted and improper

7    investigation.

8    65.    Plaintiff also learned that one of the two people conducting the investigation

9    also held discriminatory views against Plaintiff due to her sexual orientation.

10    66.    Once Plaintiff showed the investigation was false, Defendant began

11    discriminating against her through retaliation by demoting her position, reducing her pay,

12    restricting her access to the school building, and having her followed by other employees,

13    as Plaintiff believes it was Defendant's goal to terminate Plaintiff from her position.

14    67.    Defendant also unfairly scrutinized and retaliated against by Plaintiff by

15    "writing her up" under suspicious circumstances.

16    68.    Under 42 U.S.C. §2000e-2(a)(1), specifically Section 703(a)(1), prohibits

17    employers from discriminating against employees with respect to "terms, conditions, or

18    privileges of employment, because of their race, color, religion, sex, or national origin.

19    69.    Plaintiff was a member of a protected class in that she was a member of the

20    LBGTQ community.

21    70.    Defendant became aware of this fact through the course of her employment.

22    71.    During her employment with Defendant, Plaintiff was continually and

23    regularly subjected to a hostile work environment based upon her membership in the

24    above-referenced class.

25

26

72.     Plaintiff was informed on multiple occasions that other employees, including one the Superintendent and Director of Transportation harbored ill-will and discriminatory beliefs towards Plaintiff due to her sexual orientation

73.     Comments were made to plaintiff throughout the course of her employment and management continually subjected Plaintiff to a hostile work environment based upon her membership in this class.

74.     Additionally, Plaintiff sought professional medical services that included a licensed therapist.

75.     After Defendant learned that Plaintiff was speaking to a licensed therapist, Defendant reached out to the therapist and attempted to pressure her into divulging protected information and conversations of Plaintiff.

76.     When the therapist stated she could not divulge information pertaining to her conversations with Plaintiff, Defendant proceeded to bad mouth Plaintiff and told the Plaintiff not to believe anything she says.

77.     Defendant treated Plaintiff less favorably than other similarly situated individuals.

78.     As a direct and proximate result of Bashas' disparate treatment, Plaintiff has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

## COUNT THREE - RETALIATION UNDER TITLE VII (ALL DEFENDANTS)

79.     Plaintiff incorporates each and every allegation above as fully set forth herein.

80.     In reporting and defending herself against Defendant's discriminatory treatment as to Plaintiff's sexual orientation, Plaintiff engaged in protected activity.

81.     After Plaintiff reported the discriminatory practices to Defendant, Defendant retaliated against her by demoting her role at her job, changing her hours, changing her rate of pay, singling her out for furthering scrutiny, and eventually wrongfully terminating her.

82.     Defendant also restricted Plaintiff from entering the school building, and directed other employees to follow Plaintiff around and scrutinize her.

83.     Defendant singled out Plaintiff for the way she proceeded to do her job, while other similarly situated employees faced no criticism.

84.     Defendant sought to pressure a therapist Plaintiff was seeing, to reveal protected conversations and confidential information stemming from her interactions with Plaintiff.

85.     When the therapist refused to reveal this protected information, Defendant proceeded to bad mouth Plaintiff, and told the therapist not to believe anything Plaintiff said.

86.     There is a causal connection established by time relevance between Plaintiff's protected activities and the adverse actions taken by Defendant.

87.     As a direct and proximate result of Defendant's purposeful retaliation, Plaintiff has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

**COUNT FOUR – DEFAMATION (ALL DEFENDANTS)**

88.     Plaintiff hereby incorporates by reference all Paragraphs above as though fully set forth herein.

89.     Defendant defamed Plaintiff when they conducted an unwarranted investigation on her and interviewed several other employees, disclosing information throughout the course of the investigation and unfounded accusations about Plaintiff to her co-workers.

1       90.    In Arizona, courts have determined that a defendant has engaged in

2    defamation if they have done the following: (i) made a statement—verbally or in writing—

3    which would tend to adversely affect the plaintiff's reputation; (ii) which a reasonable

4    reader, listener, or viewer would understand that the statement made referred to the

5    plaintiff; and (iii) communicated the statement to a third party.  Antwerp 130 Ariz. at 528,

6    637 P.2d at 738; (quoting Peagler v. Phx. News., Inc., 114 Ariz. 309, 315, 560 P.2d 1216,

7    1222 (1977)); see Dube v. Likins, 216 Ariz. 406, 417, 167 P.3d 93, 104 (Ariz. Ct. App.

8    2007) (quoting Rowland v. Union Hills Cntry. Club, 157 Ariz. 301, 306, 757 P.2d 105,

9    110 (Ariz. Ct. App. 1988)).

10       91.    Defendant conducted an unfounded and investigation against Plaintiff for

11    claims made by other employee(s) who held adverse beliefs and motivated by Plaintiff's

12    sexual orientation as a member of the LGBTQ community.

13       92.    Throughout the course of conducting an improper investigation outside the

14    protocol of the School's policy handbook, Defendant disclosed personal information

15    about Plaintiff.

16       93.    Defendant disclosed Plaintiff's personal information and allowed the false

17    accusations to spread and become gossip for other employees.

18       94.    Throughout the course of the investigation Defendant showed bias towards

19    Plaintiff, attacked Plaintiff's character, blamed Plaintiff for other employees knowing

20    about the improper investigation, and pressured a therapist Plaintiff was speaking to reveal

21    protected information about Plaintiff.

22       95.    When the allegations against Plaintiff were determined unfounded and the

23    investigation was closed, Plaintiff's reputation and good name was harmed in the process.

24       96.    Defendant contacted a counselor which Plaintiff was speaking about these

25    matters with.

26       97.    Defendant pressed the counselor about conversations she had with employee.

1    98.    Defendant also attempted to pressure the counselor into revealing protected

2    information about Plaintiff.

3    99.    Defendant proceeded to speak ill of Plaintiff to the counselor and showed

4    personal bias against Plaintiff.

5    100.   The counselor was shocked by Defendant's behavior, and had to state that in

6    her professional capacity she will not be speaking about the nature of the conversation she

7    had with Plaintiff.

8    101.   Defendant's statements reflect adversely on Plaintiff's conduct in a business

9    or profession and is therefore considered defamation "per se."  McClinton v. Rice, 76

10   Ariz. 358, 365, 265 P.2d 425, 429-30 (1953); see, e.g., Vacca v. Gen. Elec. Credit Corp.,

11   88 A.D.2d 740, 451 N.Y.S.2d 869, 870 (Ariz. Ct. App. 1982) (statements by defendant

12   creditor that plaintiffs "are crooks and hijackers and you are going to find a lot of your

13   units missing, and if you leave your merchandise here and don't entrust it to [defendant]

14   for safe-keeping, you will find more will be missing" made in plaintiffs' place of business

15   clearly slander per se in context), and thus would be actionable without a need to plead

16   special damages or malice.)

17   102.   Because Defendant's statements are defamation per se, Plaintiff is entitled to

18   special damages without any need to prove that it was financially harmed by Defendant's

19   statements.  Kinsey v. Real Detective Pub. Co., 52 Ariz. 353, 358, 80 P.2d 964, 967 (1938)

20   (As to libel per se, "the law presumes its falsity and that it was published with malicious

21   intent.").

## COUNT FIVE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (ALL DEFENDANTS)

22

23

24   103.   Plaintiff hereby incorporates by reference all Paragraphs above as though

25   fully set forth herein.

26   104.   Plaintiff was subjected to unfounded accusations at work.

105.   Plaintiff believes these accusations stemmed from discriminatory beliefs about her sexual orientation held by other employees and the Superintendent.

106.   Information about Plaintiff, including personal private matters, along with the unfounded accusations became known by other employees throughout the course of the investigation.

107.   Defendant blamed Plaintiff for the fact that information about Plaintiff became known and the subject of gossip at the workplace.

108.   Plaintiff was hurt embarrassed and deeply distressed about the unfounded accusations, the unwarranted investigation, and that personal information became the subject of the workplace.

109.   Plaintiff believes Defendant's ongoing harassment and retaliation continued after the investigation was closed.

110.   Defendant retaliated against Plaintiff by changing the structure of her pay, not allowing her inside the building, and having her monitored and scrutinized throughout the work day.

111.   Plaintiff was alerted to the fact that Defendant attempted to reach out to a school counselor in an attempt to pry confidential information and conversations from the counselor.

112.   Plaintiff also learned that Defendant made hurtful and disparaging comments about Plaintiff to the counselor.

113.   Plaintiff was eventually told that there was not enough work for her in the upcoming school year and was terminated.

114.   However Plaintiff learned the expected number of students needing bus services was set to increase in the upcoming school year.

1    115.    Plaintiff has suffered extreme distress from her treatment at the hands of

2    Defendant and has sought ongoing physical and mental care to cope with the harassment,

3    discrimination, and treatment at the hands of Defendant.

4    116.    The wrongful acts of Defendant were so outrageous in character, so shocking

5    in nature, so extreme in degree, as to go beyond all bounds of decency, and to be regarded

6    as atrocious and utterly intolerable.[2]

7    117.    Defendant's acts were intended to cause Plaintiff severe emotional distress

8    or carried out in reckless disregard of the near certainty that such a distress would result

9    from the wrongful acts,[3] and as a direct and proximate result of said acts, Plaintiff has

10   suffered extreme emotional distress.[4]

11   118.    As a direct and proximate result of Defendant's purposeful retaliation,

12   harassment and treatment of Plaintiff, Plaintiff has suffered from extreme emotional

13   distress, physical illness, medical expenses, loss of pay, legal fees and etc.

14                                    **<u>DAMAGES</u>**

15   **WHEREFORE**, Plaintiff DESARAE MARTIN prays for judgement against

16   Defendant(s), Prescott Valley Charter School, National PEO Payroll Management

17   Company LLC, and Vensure Employer Services, Inc., follows:

18

19

20   ─────────────────────
     [2] *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987).

21   [3] *See, e.g., Continental Life & Acc. Co. v. Songer,* 124 Ariz. 294, 603 P.2d 921
     (App.1979); *Rosales v. City of Eloy,* 122 Ariz. 134, 593 P.2d 688 (App.1979); *see*

22   *also Watts v. Golden Age Nursing Home,* 127 Ariz. 255, 619 P.2d 1032
     (1980); *accord Stewart v. Thomas,* 538 F.Supp. 891 (D.D.C.1982).

23   [4] *See also* Restatement (Second) of Torts § 46(1) (1965). *comment b*: "…[w]here the

24   conduct has been so outrageous in character, and so extreme in degree, as to go beyond
     all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

25   a civilized community ... in which ... an average member of the community would ...
     exclaim, 'Outrageous!'"

26

1    119.    As a direct and proximate result of Defendant's violations of Plaintiff's

2    protected rights in each of the above-mentioned claims for relief, Plaintiff suffered and

3    continues to suffer from emotional distress, physical illness, medical expenses, loss of

4    pay, legal fees and etc. Plaintiff is entitled to compensatory damages to make her whole.

5    120.    Alternatively, payment to Plaintiff, of an amount to be determined at trial, or

6    a different amount which may result during the proceedings, for direct and consequential

7    damages as a result of Defendant's defamation.

8    121.    In addition, payment to Plaintiff of an amount to be determined at trial, or a

9    different amount which may result during the proceedings, for punitive damages as a result

10   of Defendant's illegitimate conduct.

11   122.    In addition, special damages to Plaintiff in the amount determined by the

12   court as special damages for Defendant's defamation per se against Plaintiff.

13   123.    In addition, payment to Plaintiff for any other damages which may result

14   during the proceedings.

15   124.    Reasonable attorney's fees and costs pursuant to A.R.S. § 44-404 and/or

16   A.R.S. 12-341.01; and

17   125.    Costs of suit pursuant to A.R.S. 12-341 and such other relief as the Court

18   deems just and proper.

19

**<u>DEMAND FOR JURY TRIAL</u>**

20

21   126.    Plaintiff hereby demands a trial by jury as provided by Rule 38(a) of the

Federal Rules of Civil Procedure.

22

23   **DATED** this 22th day of June 2022.

24
                                      *Law Office of Joshua Black, PLC*

25
                                      */s/Joshua C. Black*

26              By:   _____ .

-15-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Joshua C. Black
Timothy F. Rosini
2999 North 44th Street, Suite 308
Phoenix, AZ 85018
*Attorneys for Plaintiff*